UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2019 MAR 28  PM 4: 16

------------------------------------------------------X

Nicholas Pimentel,

Plaintiff            :

v.

Case Number: 19-CV-01346

Clifford Schwenker,  individually

Bill Ittounas,  individually

Sheandra R. Clark, individually

Pamela Kelly, individually

**Robert Reinlan,** individually

Dana Sabghir, individually

Natasha Anderson, individually

Fabio Maciel, individually

Charlotte Ling, individually

John Doe, individually

Jill Wubben, individually

Ryan Langel, individually

Marcy J. Davidson, individually

Ira Rosenstein, individually

Delta Air Lines, Inc.

Sedgwick Claims Management Services, Inc.

Jones & Jones, Inc.

Morgan, Lewis & Bockius LLP

Pamela Alson, individually

Elaine Little, individually


Defendants

------------------------------------------------------X



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3 28 19

## AMENDED AMENDED COMPLAINT
## JURY TRIAL DEMAND

Plaintiff Nicholas Pimentel, pro se, hereby alleges as follows, with all allegations made upon information and belief:

### PRELIMINARY STATEMENT

1. Plaintiff Nicholas Pimentel, a former employee of Defendant Delta Air Lines, Inc., brings this action against Defendants Clifford Schwenker, Bill Ittounas, Sheandra R. Clark, Pamela Kelly, Natasha Anderson , Fabio Maciel, Charlotte Ling, John Doe, Ryan Langel, Sedgwick Claims Management Systems, Jill Wubben, Marcy J. Davidson & Delta Air Lines (collectively, the "Defendants") for Fraud, Conspiracy to Commit Fraud, Intentional Interference with Economic Advantage, Defamation Per Se, Libel Per Se, and Slander Per Se.

### PARTIES

2. Plaintiff Nicholas Pimentel is a natural person, domiciled in Manhattan, New York.
3. Defendant Delta Air Lines, Inc ("FOX") is a Delaware corporation, domiciled in New York with headquarters in Atlanta, Georgia.
4. Addresses and locations of Delta and Sedgwick employees is not known for certain at this time.
5. Sedgwick Claims Management Systems, Inc. is a Delaware corporation, domiciled in New York.

### VENUE AND JURISDICTION

5. This Court has subject matter jurisdiction over this action pursuant to diversity of citizen  jurisdiction under 28 U.S.C. § 1332. For purposes of diversity of citizenship jurisdiction, Mr. Pimentel is a New York citizen, the amount in controversy well exceeds the statutory limit, exclusive of interest and costs, and Delta is a New York citizen,  additionally all Defendants either work in New York City or there is diversity jurisdiction.  This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6. Venue in this Court is proper under 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District and/or because Delta Airlines major business hub is predominately located in this Judicial District. Sedgwick Claims Management Systems, Inc. has a major business hub both in New York City and in Melville, NY.

### FACTUAL BACKGROUND
### SUMMARY OF FACTUAL BACKGROUND

7. Mr. Pimentel brings this Complaint for Fraud, Conspiracy to Commit Fraud, Intentional Interference with Economic Advantage, Negligent Hiring, Retention & Supervision, Tortious Interference with Business On Relations, Defamation Per Se, Libel Per Se, and Slander Per Se based upon the following allegations.

8. On November 10, 2016, Plaintiff, a flight attendant working at Defendant Delta Air Lines, because of his religion (Islam) was discriminated against, harassed, and verballed assaulted for 2 days by Captain Clifford Schwenker, both on the plane and on the layover (the work environment).

9. Plaintiff was removed from the flight by Captain Clifford and not allowed to earn a weekly salary after Captain Clifford made disparaging anti-Muslim "Trump comments" and told Plaintiff that "I heard you are Muslim and people won't feel comfortable with you being on this plane." Plaintiff immediately

emailed Base Manager Bernard Rawls to tell him to come to the gate as Plaintiff was being discriminated against and harassed in the workplace because of his religion. Plaintiff called the Ops Tower for Delta Managers to assist Plaintiff, as Captain Clifford, WHO HAD NEVER MET PLAINTIFF before this day, made these comments before Plaintiff ever admitted to Captain Clifford that Plaintiff was Muslim.

10. FSM Anna Masinyka and FSM Christopher George told Captain Clifford Schwenker that he could not discriminate against Plaintiff because of his religion if Plaintiff never did anything wrong and that Plaintiff can not be denied the right to work his scheduled flight to earn a paycheck.

11. FSM Anna Masinyka told her manager, Base Manager Bernard Rawls, that Plaintiff "WAS HARASSED" by Captain Clifford Schwenker.

12. Captain Clifford Schwenker threatened that he would make up false accusations against Plaintiff if Plaintiff made a formal complaint to Human Resources about this religious harassment and religious discrimination.

13. Coincidentally, on the same day, Corporate Director, Tanya Morgan, emailed Plaintiff and assured Plaintiff that there wasn't "anything in your personnel file to remove."

14. On January 4, 2017, Clifford Schwenker, who does not have access to Plaintiff's personnel file, wrote a libelous statement that Plaintiff had many violations of company policy in his personnel file, among other intentionally false and malicious defamatory, libelous, and slanderous comments to his employer, Defendant Delta, which Defendant Delta believed and then issued Plaintiff an adverse employment actions based on the SAME DAY that Captain Clifford Schwenker wrote these lies to the Human Resources Manager, Bill Ittounas, who terminated Plaintiff, with "NO" information or evidence to support a recommendation for termination. Plaintiff's career, income, and professional reputation was permanently damaged BECAUSE OF THE 100% false statements made by Clifford Schwenker, out of malice and revenge for reporting religious discrimination and religious harassment, protected activity under Title VII.

**CAPTAIN CLIFFORD DEFAMATORY, LIBELOUS, and SLANDEROUS COMMENTS referring to Plaintiff**

1)"Prevent him threatening the rest of my crew that night "

2)"A confirmed liar "

3)"He was ashamed of his  aggressive prior actions against so many"

4)"He figurred to take a further aggressive counter stance against a 'perceived ' threat."

5)"He is a threat to ALL of his fellow crew members and to Delta Airlines as long as he is allowed to continue flying."

6)"I was informed that many of flight attendants were not happy about his attitude , his apparent lack of team spirit and his past actions.."

7)Plaintiff "had my crew 'walking on eggshells.'"

8)Captain Clifford stated that his harassment of Plaintiff  , based on his religion, was " i all in accordance with Delta Standards. This was strictly by his past behavior ."

9)"I hoped he had settled down and learned a few lessons..."

10)"He documented a hundred or two, events."

11)"Nicholas explained that in his training he was encouraged to document all events that did not seem correct."

12)"Charles tried to counsel him towards better behaviors. "

13)"This is ALL HEARSAY!"

14)"In case Nicholas Pimentel reverted to his destructive ways."

15)"The only mistake I made as Captain on this flight was believing in Nicholas Pimentel as I thought he learned something about fitting in and being a responsible crew member."

16)"I had hoped that I would not need to write up Nicholas Pimentel for his short comings and unprofessional attitude ."

17)"This is a sad situation, At less than 1 year into his job as a flight attendant , Nicholas Pimentel has felt the need to exercise his rights in Delta 'Human Rights Department."

18)"Mr. Pimentel distorted and downright lied about events on Delta Flight 471 on Nov 10. "

19)"Please review all of Nicholas Pimentel's file and look at all of the events he has written up in less than one year. These reports do create chaos, distrust and stress for his fellow crew members."

20)"He has become a viable threat to our successful operation."

21)"My recommendation …is that Nicholas Pimentel he placed on administrative leave until a complete psychiatric evaluation can be accomplished."

22)"I do not know why Nicholas Pimentel feels he always need to put others down or document his actions, but it produces unsettling emotions and places undesired stress on his fellow crew members."

23)"Please review all the events Nicholas Pimentel has documented and note all the time and effort had been spent trying to get Mr. Nicholas Pimentel working as a professional and productive flight attendant."

24)"He seemed to have caused my flight crew to become paranoid when stories of his past behaviors were shared."

25)"This is not a good situation ,more negative behavior and team destruction come to light as Nicholas Pimentel actions are examined."

26)"Nicholas Pimentel appears to be aggressive in his actions."

27)"He does not appear to fit in. Nicholas appears aloof, arrogant and smugly self-righteous."

28)"In my flight DL471 and short time with Nicholas Pimentel, his actions and behavior do not appear to be that of a professional. "

29)"Nicholas Pimentel actions , appeared to me to 'suck the enthusiasm' out of his fellow workers, he seems to create lots of stress and disharmony. My flight crew was not happy with him. His actions appear to result in less than Delta's 'Outstanding' customer service. When fellow flight crew members are concerned about protecting or defending themselves, they are not at their best."

30)"In the future , I will not feel comfortable allowing Nicholas Pimentel to be part of my flight crew, I now think that Delta Airlines would be better off without Nicholas Pimentel employed as a flight attendant."

**FABIO MACIEL's DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS**

1. Fabio Maciel, Plaintiff's supervisor at the time, told his employer, Defendant Delta Air Lines, Inc, and at least over 20 employees,  that Plaintiff was "gay," "hitting on all his co-workers," "is fucking Manager Bernard Rawls to get his FMLA approved," "is a PROSTITUTE who takes $100 in cash from passengers for a 5 minute sex session while working as flight attendant onboard Defendant Delta Air Lines planes."

2. Fabio Maciel has stated that Plaintiff, who is Muslim, "is only friends with those "Jews" (referring to certain Israeli-Jewish male flight attendant colleagues) "because they are running a HEIDI FLEISS type of prostitution ring out of their Tel-Aviv hotel rooms and that's why he is always going to Tel-Aviv, Israel."

3. Several Delta employees have admitted,both verbally and in writing, that they heard Fabio Maciel making these CRIMINAL ACCUSATIONS against Plaintiff to them about Plaintiff, who is Muslim, and his Jewish male colleague friends.

4. Fabio Maciel stated, "The ONLY REASON that Plaintiff is rated NUMBER 1 in CUSTOMER SERVICE at the NYC BASE by the passengers and gets all those good letters is because he has sex with both men and women passengers for money in the bathroom."

5. Having sex on an airplane is a crime. Prostitution is a crime.  Owning a prostitution business is a crime. These intentionally malicious, slanderous, and libelous comments are 100% false and have never proven with any evidence.

## PAMELA KELLY'S DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS

1. Pamela Kelly, who works in Defendant Delta Air Lines' Equal Opportunity Department, told Plaintiff, VP James Sarvis, Bill Ittounas and her direct Manager, Brian San Souci, that she "heard" from Manager Charlotte Ling that Plaintiff ALLEGEDLY "had sex with a passenger in exchange for money in the bathroom while travelling as a non-rev" and Plaintiff "was using his pass travel privileges for his prostitution business," and that she "heard" this from many Delta managers. Pamela Kelly then wrote on documents, produced by Defendant Delta, that Plaintiff was allegedly disciplined and subsequently terminated for his "conduct" while "travelling" on a Delta Air Lines plane.  Pamela Kelly, on the telephone, refused to divulge to Plaintiff, where and from who Charlotte Ling  "heard" these  defamatory, libelous, slanderous statement and criminal accusations that were Pamela Kelly herself validated as facts.

2. EO Manager, Brian San Souci told Plaintiff that this was part of the reason why he was terminated and that although there wasn't any evidence or information to validate these accusations, Plaintiff's termination was not appealable.

## BILL ITTOUNAS' DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS

1. Bill Ittounas is employed at Defendant Delta Air Lines, Inc's JFK Airport hub, as the Human Resource Manager for the New York City flight attendant base.

2 Bill Ittounas.told Plaintiff on the telephone on February 15, 2018 that part of the reason Plaintiff was being terminated was because Plaintiff was "travelling to Tel-Aviv on Defendant Delta's airplanes to manage that Heidi Fleiss prostitution business, while using and abusing your FMLA to get the time off from work"  and because "you were constantly having sex with Delta customers for money in the bathroom and you were never even discrete about it."

3.Bill Ittounas perjured himself many times in his deposition by alleging that Plaintiff admitted to this Tel-Aviv travel, stating that "You told me you were in Tel-Aviv."

4. Plaintiff did not have any phone or verbal conversations with Bill Ittounas' from January 1, 2017 until October 30, 2017.

5.Bill Ittounas perjured himself, when he originally tesitified that he did not know the reason why Plaintiff was terminated because Manager Edwin Avelar terminated him and he had not knowledge of the details and that he just signed the paper without any investigation.

6.. Bill Ittounas, perjured himself, when he originally testified that Plaintiff abused his pass travel privileges in June 2017 while Plaintiff was hospitalized and on an approved FMLA leave.

7. Bill Ittounas, after confronted with authenticated Delta documents, later changed his fabricated story and testified that there was NO PASS TRAVEL in June 2017 and NO PASS TRAVEL to Tel-Aviv in September 2017.

8. Bill Ittounas perjured himself when he first testified that Manager Edwin Avelar wrote the "Recommendation for Termination" of Plaintiff's employment, but then later admitted that he himself wrote Plaintiff's "Recommendation for Termination."

9. Bill Ittounas admitted that Defendant Delta's Equal Opportunity Department Manager, Pamela Kelly, and Delta's in-house legal counsel CONSPIRED AND FRADULENTLY LIBELED, SLANDERED, and DEFAMED Plaintiff by manufacturing "reasons" to "support a recommendation for termination" because there was "NO" information or evidence to support a recommendation for termination.

10. Bill Ittounas, participated in the fraudulent conspiracy to defame, libel and slander Plaintiff to intentionally interfere with economic advantage of Plaintiff by being THE employee responsible for initiating Plaintiff's termination based on criminal accusations and then writing this "Recommendation for Termination" that had no factual or evidentiary basis.

11. Bill Ittounas' admitted, based on those authenticated email documents, that the directions for this fraudulent libelous, slanderous, defamatory conspiracy came from Defendant Delta's in-house attorney, Sheandra R. Clark.

## SHEANDRA R. CLARK's DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS
1.Sheandra R. Clark is the in-house attorney for Defendant Delta Air Lines, Inc, who was the GRAND CONSPIRATOR, who CONSPIRED AND FRADULENTLY LIBELED, SLANDERED, and DEFAMED Plaintiff by manufacturing "reasons" to "support a recommendation for termination" when there was "NO" information or evidence to support a recommendation for termination and severely permanently damaged Plaintiff's professional reputation.

2. Because Plaintiff's promotion was revoked after Plaintiff reported being choked and sexually assaulted in a hotel room and because Plaintiff's manager Cheval Morrison was "groping" him, asking for gay anal sex, and making Plaintiff watch porn at work for 9 months, Plaintiff filed an EEOC complaint.

3. Because Plaintiff filed that initial EEOC complaint after he was threatened not to, Sheandra R. Clark manufactured all of these false criminal accusations against Plaintiff to retaliate for filing that intial EEOC complaint and issued Plaintiff adverse employment actions, whereby Plaintiff suffered economic harm and emotional distress.

4. Sheandra R. Clark maliciously invented, manufactured, or at the very minimum used some third party's alleged  hearsay, gossip, lies, and slander to intentionally destroy Plaintiff's career at Defendant Delta Air Lines.Inc.

## JOHN DOE'S DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS
1.John Doe, identity currently unknown, was allegedly the individually who told Charlotte Ling, who then told Pamela Kelly  that Plaintiff  ALLEGEDLY "had sex with a passenger in exchange for money in the bathroom while travelling as a non-rev" and Plaintiff "was using his pass travel privileges for his prostitution business," and that she "heard" this from many Delta managers.  Pamela Kelly then wrote on

documents, produced by Defendant Delta, that Plaintiff was allegedly disciplined and subsequently terminated for his "conduct" while "travelling" on a Delta Air Lines plane. Pamela Kelly, on the telephone, refused to divulge to Plaintiff, where and from who, she "heard" these defamatory, libelous, slanderous statement and criminal accusations.

2. Through discovery, this name and identity of this individually will be updated.

**NATASHA ANDERSON'S DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS**
1 .Natasha Anderson is currently a DSG, Delta Global Services' employee, who was Plaintiff's former manager at the NYC JFK base.

2.After Plaintiff reported being choked and sexually assaulted by another Delta employee on 12/25/2015, several days later, on 01/02/2016, Natasha Anderson libeled, slandered, and defamed Plaintiff by notating in a "DISCUSSION LOG" that Plaintiff had 5 or 6 verbal and/or physical altercations/fights/conflicts with other Delta employees, after threatening Plaintiff not to call the NYPD and leaving voicemails threatening termination if he called the police. Natasha Anderson's manager, Bernard Rawls, later invalidated or "modified" this IVC that documented Natasha Anderson's fraudulent defamatory, slanderous and libelous false criminal accusations in this "Discussion Log."

3. On or around May 2015, Plaintiff refused to allow Delta passengers to be severely injured or killed by an older, Asian flight attendant's neglect or possible misunderstanding of Delta/FAA door safety, "all call" policy regarding "blown slides;", while Plaintiff refused to adhere to Natasha Anderson's AGEIST and ANTI-ASIAN discriminatory bias and slander this "crazy, old Asian bitch" by writing a false report. Because Plaintiff refused to write a false report to get this older, Asian woman terminated, Natasha Anderson, who is black, maliciously mischaracterized Plaintiff's following of FAA policy, as a physical and verbal conflict. However, Natasha Anderson did not give Plaintiff an adverse employment action regarding Plaintiff saving Delta passengers from severe physical harm and death UNTIL Plaintiff reported being choked and sexually assaulted in December 2015.
4.Plaintiff did not have access to this alleged "DISCUSSION LOG" and therefore, was never made aware that she issued this IVC "Informal Verbal Conversation" on 01/02/2016 and/or on 01/26/2016.

5.Plaintiff was never made aware that Natasha Anderson wrote these 100% false, defamatory, libelous, and slanderous comments in this "DISCUSSION LOG" until October 2018.

6.. On 07/21/2015, Natasha Anderson attempted to imply that Plaintiff is not proficient in the English language, when she wrote that Plaintiff needed to learn how to use the pronoun, "we," insinuating that Plaintiff does not have remedial English language communications skills.

7. On 07/21/2015, another fraudulent, libelous, slanderous and defamatory IVC was issued by Natasha Anderson as an act of retaliation to Plaintiff's 06/15/2015 complaint of religious harassment.

8..On 09/29/2015, Natasha Anderson issueded another fraudulent, libelous, slanderous and defamatory IVC was an act of retaliation to Plaintiff's August 2015 complaint of religious harassment by alleging that Plaintiff requested that another flight attendant be drug-tested.

9. Natasha Anderson repeatedly threatened Plaintiff from ever reporting the Delta pilots and his employer, Delta Air Lines to the FAA or OSHA, when Plaintiff opposed Defendant Delta authorizing these piltos to fly the airplane with public passengers aboard in an effort to prevent losing money on cargo and other economic losses which would have resulted if that plane was delayed and cancelled. Defendant Delta made Plaintiff, Maya Gray, Clarisa Feldman and the rest of the crew intentionally lie to passengers regarding the initial delay of the flight. The flight was initially delayed because Defendant Delta wanted to give the pilots of a few extra hours to sober up and told Plaintiff and his co-workers that after 12 hours of being on illegal drugs that they were safe to fly according to the FAA. Defendant Delta coerced Plaintiff and his coworkers to intentionally fraud the passengers, violating Plaintiff's First Amendment Rights and along with FAA policies. The FAA told Plaintiff that this alleged 12 hour drug rule does not exist. Defendant Delta conspired and defrauded Plaintiff and his co-workers to force them to work on the

airplane, by forcing them to lie to the passengers, all in an effort to not lose money, jeopardizing public safety.

## CHARLOTTE LING's DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS

1. Charlotte Ling was Plaintiff's manager.

2. Charlotte Ling allegedly told Pamela Kelly that Plaintiff ALLEGEDLY "had sex with a passenger in exchange for money in the bathroom while travelling as a non-rev" and Plaintiff "was using his pass travel privileges for his prostitution business," and that she "heard" this from many Delta managers.  Pamela Kelly then wrote on documents, produced by Defendant Delta, that Plaintiff was allegedly disciplined and subsequently terminated for his "conduct" while "travelling" on a Delta Air Lines plane.  Pamela Kelly, on the telephone, refused to divulge to Plaintiff, where and from who Charlotte Ling  allegedly "heard" these defamatory, libelous, slanderous statement and criminal accusations that were Pamela Kelly herself validated as facts.

3.Charlotte Ling told other Delta employees that Plaintiff was transgender.

4. Because of Charlotte Ling's slander, defamation, and libel, Plaintiff's next Manager Phillip Vieth used feminine pronouns to refer to Plaintiff, because he was informed by Charlotte Ling that Plaintiff was born a female who just recently transitioned to a male.

5. On October 4, 2016, Charlotte Ling accused Plaintiff of being involved in a verbal/physical altercation/fight/conflict with Dina Moore when Plaintiff reported Dina Moore's being drunk on the airplane, her  FAA safety violations and that she was VAGINALLY MASTURBATING in front of him on the airplane (work environment).

## RYAN LANGEL's DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS
1.Ryan Langel made criminal accusations against Plaintiff when he stated in writing that Plaintiff was involved in a verbal/physical altercation/fight/conflict on October 4, 2016 with Dina Moore when Plaintiff reported Dina Moore's being drunk on the airplane, her  FAA safety violations and that she was VAGINALLY MASTURBATING in front of him on the airplane (work environment).

2. Ryan Langel's 100% false criminal accusations against Plaintiff, resulted in economic harm and professional, permanent damaged to his reputation.

3. In reference to Charlotte Ling's 10/04/2016 IVC, Ryan Langel's stated that Plaintiff's promotion was revoked because Plaintiff reported that Dina Moore was VAGINALLY MASTURBATING in front of him on the airplane.

4. Charlotte Ling, the manager who made the decision to revoke Plaintiff's promotion, explicitly stated verbally and in writing that Dina Moore VAGINALLY MASTURBASTING in front of Plaintiff on the plane, with passengers nearby, had absolutely nothing to do with Plaintiff's promotion being rescinded.

5.  Base Director Samuel Johnson and Human Resources, who both later investigated this incident, officially determined  that the reason for Plaintiff's promotion being revoked was NOT based on the fact that Plaintiff reported that Dina Moore was VAGINALLY MASTURBATING in front of him on the airplane with passengers nearby.

6. Ryan Langel, after knowing all of the facts and statements by many of his colleagues, intentionally and maliciously perpetuated  A PRETEXTUAL REASON for Plaintiff's promotion being revoked because many other managers involved admitted that the Dina Moore's VAGINAL MASTURBATION incident had nothing to do with Plaintiff's promotion being revoked.

7. Ryan Langel stated in writing that Plaintiff was known for his "laudable customer service."

8. Ryan Langel then intentionally, maliciously defamed, slandered, and libeled Plaintiff by misrepresenting facts to fraud and deceive a third party by stating in writing to that Plaintiff had a pattern of being combative and insinuated that Plaintiff got into several verbal and/or physical altercations with people.

9. Ryan Langel intentionally maliciously defamed, slandered, and libeled Plaintiff by misrepresenting facts to fraud and deceive a third party by stating that Plaintiff was the cause of Priscilla Ivanoff's false accusations against Plaintiff based on her feeling "uncomfortable" with being on the plane due to Plaintiff's religion.

10. Hosana Wurtz falsely accused Plaintiff of verbal and physical assault in regards to a conversation in a hotel lobby that was video recorded by the hotel video monitors and witnessed by other Delta employees.

11. Defendant Delta later determined through their investigation that Plaintiff never verbally or physically assaulted Hosana Wurtz.

12. Even though Hosana Wurtz violated Delta company policy by lying in a company investigation, Hosana Wurtz was never terminated or disciplined for making false accusations against Plaintiff, who is a male.

13. After knowing that Hosana Wurtz' attempted to deceive Defendant Delta by making false accusations of physical and verbal assault against Plaintiff, , Ryan Langel, intentionally maliciously defamed, slandered, and libeled Plaintiff by misrepresenting facts to fraud and deceive a third party by mischaracterizing the incident by stating that Plaintiff caused the incident.

14. Corporate Director Tanya Morgan stated in an email to Plaintiff that "there isn't anything in your personnel file to remove," Ryan Langel, intentionally and maliciously defamed, slandered, and libeled Plaintiff by misrepresenting facts to a third party  in writing by telling this third party that Plaintiff had been disciplined on more than 5 occasions and his personnel file was full of written warning letters and "coachings."

## MARCY J. DAVIDSON's DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS

1. Marcy Davidson, a Claims Specialist at Sedgwick Claim Management Services, accused Plaintiff of being "lazy" and a "liar," and accused Plaintiff in writing of not having "a serious health condition," and accused Plaintiff of "using and abusing FMLA" to have days off in the summer and stated that Plaintiff "was never in the hospital for a dog bite attack in Puerto Rico" and then denied Plaintiff  FMLA and refused to pay Plaintiff.

2. Flight attendants at Delta Air Lines are allowed to use their PPT (personal paid time) and VAC (Vacation) pay time to cover their FMLA absences, which is administered, processed and coded by Sedgwick Claims Management Systems.

3. The earned PPT and the Vacation year that Sedgwick could've paid Plaintiff begins on April 1 every year.

4. Plaintiff never used any of his earned PPT time in 2017.

5. Plaintiff never used any of his earned Vacation time in 2017.

6. On or around June 19, 2017, Plaintiff was in the hospital and was using FMLA and was out of work until July 14, 2017.

7. Marcy Davidson refused to pay Plaintiff his earned PPT and VAC available to him because she stated that Plaintiff didn't have a "serious health condition," even after she received all of the Plaintiff's FMLA paperwork from the hospitals and Plaintiff's doctors.

8. On July 17, 2017, Plaintiff's Base Manager, Edwin Avelar testified that the FMLA absences that Elaine Little wrote in this "DISCUSSION LOG" that those FMLA absences were "re-coded by Sedgwick" and Plaintiff's absences became unexcused "accountable" absences after Marcy Davidson interfered with Plaintiff's FMLA leave request.

9. Marcy Davidson admitted, in documents produced by Delta, that Plaintiff qualified for FMLA and met all of the requirements but she still denied Plaintiff's FMLA claim.

10. Marcy Davidson admitted that she mailed a letter to Plaintiff, dated July 07, 2017, that he did not have a "serious health condition" and that he was not eligible for FMLA.

11. Marcy Davidson never allowed to Plaintiff to obtain a Second Second Opinion from a doctor with reasonable travel distance, based on the slander, defamation and libel by Delta employees.

**ROBERT REINLAN'S DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS**
1. Robert Reinlan has never stated that he personally ever met Plaintiff.
2. There is no evidence that Plaintiff and Robert Reinlan have ever met or worked together.

3. Robert Reinlan stated that he personally "removed" Plaintiff from his aircraft, allegedly when Plaintiff was having sexual "conduct" in the bathroom and that Plaintiff became "combative" after Plaintiff was allegedly confronted by him.

4. Robert Reinlan has intentionally maliciously defamed, slandered, and libeled Plaintiff by misrepresenting facts to fraud and deceive a third party by stating that Plaintiff engaged in sexual "conduct" "while travelling as a non-rev."

5. Robert Reinlan can not truthfully state that it was actually Plaintiff that he allegedly eyewitnessed having sex in any bathroom or that he ever witnessed any "combative" "conduct" displayed by Plaintiff.

6. Robert Reinlan contacted the police or airport security regarding this alleged "conduct" and "combative" behavior.

7. The correct security procedure when passengers are being "combative" and engaging in sexual "conduct" in the bathroom is to notify the local authorities.

**Elaine Little's DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS**
1. Elaine Little told Plaintiff's employer that he was a "liar" and that Plaintiff " was frauding Delta. She stated, "You don't have any disability or any serious medical condition that entitles you to FMLA" and stated, "You can't file a claim for FMLA for a dog bite."

2. Elaine Little stated, regarding Plaintiff's FMLA leave of absence, "These hospital records from Puerto Rico you sent in are not valid because Puerto Rico isn't considered America, so you don't qualify for FMLA, so your FMLA leave is getting denied and you will be getting terminated for your accountable absences."

3. Plaintiff never told his Manager Elaine Little that he had IBS.

4. Defendant Delta allows managers to have access to a computer system called Via-1, which is a Sedgwick Claims Management System, where FSM Managers can view their subordinates medical information and FMLA leave of absence details.

5. Elaine Little violated Plaintiff's HIPAA rights when she told many other managers and Plaintiff's colleagues that he had IBS, this is a breach of Plaintiff's confidentiality.

6. Elaine Little called Plaintiff on 07/17/2017 to tell him that Defendant Marcy Davidson also told her that he had IBS and that Plaintiff could still work if he had an IBS flare-up because all he needed to do was just shove a "tampon" in his "leaky hole."

7. Plaintiff received a letter from Marcy Davidson a few days later stating that he didn't have any "serious medical condition."

8. Delta Managers are evaluated on how well they manage their flight attendant's reliability (attendance).

9. Delta employees are not required to divulge what specific disabilities, medical conditions or medical problems they have to their Managers.

10. Elaine Little and Plaintiff did not have any phone contact from June 14, 2017 through July 14, 2017.

11. Marcy Davidson spoke to Elaine Little on  the telephone on or around July 17, 2017 and told Elaine Little to call Plaintiff to warn him that he was being denied FMLA leave for his past absences because he didn't have any "serious medical condition" and "Puerto Rican hospital records aren't valid for FMLA leaves, so expect a denial letter in the mail, and threatened Plaintiff "to stop being a lazy Puerto Rican "and that he " better get back to work and stop trying to fraud Delta with fake Puerto Rican hospital records."

12. Plaintiff is not Puerto Rican.

13. Defendant Bill Ittounas testified that Plaintiff did update Defendant Delta Air Lines with his address change to Puerto Rico when he moved to Puerto Rico in June 2017.

**Dana Sabghir & Jones & Jones, Inc.'s DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS**

1. Plaintiff's termination letter on Delta letterhead DOES NOT state a written reason for Plaintiff's termination

2. After Dana Sabghir was already aware that Bill Ittounas gave testimony stating that there was "NO" information to support a recommendation for Plaintiff's termination and that Plaintiff has never traveled to Tel-Aviv on his "pass travel" benefits/privileges for any "prostitution business" or "conduct" based on airplane bathroom sex in exchange for money, Dana Sabghir maliciously and intentionally defamed, libeled and slandered Plaintiff by writing to a third party that Plaintiff was terminated because of this 100% manufactured false pretextual reason, in an effort to cause economic harm to Plaintiff and prevent him from employment at an airline. Hence, Dana Sabghir's persistent repeating of this slander, libel, and defamation that she knows to be false, is intentional.

3. After Plaintiff read this **DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS** that was authored and signed by Dana Sabghir, Plaintiff emailed her and requested that she "CEASE AND DESIST" and "RETRACT" those intentionally malicious **DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS she continues to publicly make about Plaintiff in writing. Plaintiff gave Dana Sabghir** 48 hours to **RETRACT** those false statements, which are extremely damanaging to Plaintiff's reputation and career, and she REFUSED AND FAILED to RETRACT, and apologize.   These **DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS** that were authored and signed by Dana Sabghir,  and then sent to a third party, which later became part of public records, has yet to be retracted.

4. Dana Sabghir and Jones & Jones, Inc. are still shamelessly continuing to libel, defame and slander Plaintiff name and character, causing him embarrassment, shame, and professional ruin.

5. Dana Sabghir and Jones & Jones, Inc do not have immunity because their libel, slander and defamation are not related to judicial proceedings, where Plaintiff has a forum to defend their 100% false statements they continue to make about Plaintiff with impunity.

## Jill Wubben's DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS

**1.** Jill Wubben is Claims Manager, who works at Sedgwick Claims Management Services, Inc.

2. Plaintiff called and emailed Jill Wubben to appeal Marcy Davidson's interference and retaliation for filing an FMLA claim.

3. Jill Wubben told Plaintiff on the phone and in emails that she investigated Plaintiff's denied FMLA claim and was informed by Plaintiff's manager, Elaine Little, at Delta Airlines that Plaintiff was a "fraud" who "never had a serious health condition" that qualifies for FMLA."

4. Jill Wubben told Plaintiff that according to employees at Defendant Air Lines in Atlanta, Plaintiff "had a history of using and abusing FMLA to violate pass travel benefits to Tel-Aviv for prostitution reasons."

5. Jill Wubben refused to re-open Plaintiff's denied FMLA claim and therefore, violated the Department of Labor's excessive travel and Second Opinion doctor FMLA guidelines.

6. Jill Wubben never allowed to Plaintiff to obtain a Second Second Opinion from a doctor with reasonable travel distance.

7. Jill Wubben admitted that those once FMLA covered absences became "accountable" absences and uncoverd by the FMLA.

## Sedgwick Claims Management Services, Inc.'s DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS

1. Sedgwick (SCMS) is liable for these employees who made DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS against Plaintiff.

2. Sedgwick (SCMS) relied on defamatory, libelous, slanderous and criminal accusatory statement by Delta employees to violate the Family Medical Leave Act and then fraudulently interfered with Plaintiff rights under the FMLA by repeating these false statements as a factual basis to deny Plaintiff FMLA.

3. Sedgwick (SCMS) fraudulently and maliciously conspired with Defendant Delta to violate the Department of Labor's FMLA guidelines, resulting in Plaintiff's termination, causing Plaintiff economic harm, physical harm, and emotional distress.

4. Kirsten Corsette's constant surveillance on Plaintiff, as well as Marcy Davidson's constant daily phone calls and harassment threatening Plaintiff for exercising his rights under FMLA. Sedgwick is liable for neglecting the Stalking legislation which has been enacted at the federal level. In 1996, Congress passed the **Interstate Stalking Punishment and Prevention Act (Interstate Stalking Act),** a federal statute to combat stalking. The law makes it a felony to cross state lines "with the intent to kill, injure, **harass, or intimidate another person,**" if the result of doing so causes the person, her spouse or partner, or member of her immediate family to "fear death" or "serious bodily injury." Thanks to an amendment in 2000, the Interstate Stalking Act now contains provisions reaching other stalking behaviors, such as **harassment through the mail, the Internet or any other "facility of interstate or foreign commerce."**

5. Plaintiff can provide emails, documents, phone records, and documents produced by Defendant Delta as evidence that Sedgwick employees were constantly stalking, harassing, and threating Plaintiff, as well as placing him under constant surveillance, exasperating his PTSD.

## Delta Air Lines, Inc. DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS

**1.** Defendant Delta is liable for all of their employees who made DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS against Plaintiff.

2. Defendant Delta relied on defamatory, libelous, slanderous and criminal accusatory statement by their employees to violate the Family Medical Leave Act and other Title VII laws, and then fraudulently interfered with Plaintiff rights under the FMLA by repeating these false statements as a factual basis to deny Plaintiff FMLA, revoke fringe benefits, revoke travel benefits, retaliating by issuing adverse employment actions and later admitting to "NO" evidence of these 100% false accusations, and subsequently, manufacturing defamatory, libelous and slanderous reasons for terminating Plaintiff.

3. Defendant Delta intentionally and maliciously frauded and deceived the NYS Department of Labor by telling them that Plaintiff never worked at Delta Air Lines, Inc,. in the year 2016, or at least from October 1, 2016- December 31, 2016, to retaliate against Plaintiff by preventing him from collecting Unemployment Insurance benefits.

4. Plaintiff has suffered much economic harm even after Plaintiff's termination because of Defendant Delta's continued acts of retaliation and defamation, slander, and libel.

5. Shortly before Plaintiff was terminated, Plaintiff applied for a job at another airline to become a flight attendant. The recruiter was very interested in hiring Plaintiff because Plaintiff spoke 3 other languages besides English, was accepted into Delta's Purser program ( until the retaliatory demotion which occurred less than 24 hours later by a Manager because Plaintiff had previously reported sex assault), and due to Plaintiff's education and other life experiences. However, after the recruiter contacted Defendant Delta for employment verification, Defendant Delta told the recruiter that Plaintiff was terminated for "sexual conduct while travelling on a Delta plane as a non-rev." When the recruiter stopped emailing Plaintiff with updates on the status of the previously promised scheduling of the in person job interview, Plaintiff called the recruiter and asked her to be honest with him of why she was no longer interested in hiring Plaintiff, and the recruiter told Plaintiff was Defendant Delta Air Lines, Inc, communicated to her as the reason for Plaintiff's termination.
6. Plaintiff's termination letter on Delta letterhead DOES NOT state a written reason for Plaintiff's termination.

6.Plaintiff's suspension letter states in writing on Delta letterhead that Plaintiff was suspended for "reasons" discussed on the telephone.

   6. Defendant Delta allows managers to have access to a computer system called Via-1, which is a Sedgwick Claims Management System, where FSM Managers can view their subordinates medical information and FMLA leave of absence details. This is a violation of Plaintiff's HIPAA and a breach of confidentiality actionable under NYS law. Plaintiff has suffered severe sham, embarrassment, humiliation, degradation and denial of FMLA due to his manager Elaine Little's interference with his FMLA leave because she didn't believe that Plaintiff had a "serious health condition" and his FMLA covered absences were affecting her management scores. Plaintiff's FMLA leave of absence was allegedly a conflict of interest to his manager Elaine Little career because she told him that his FMLA absences had a negative impact, which affected her job performance evaluation.
   7. Defendant Delta committed fraud when it induced Plaintiff into an employment contract promising him Overtime, then made him work overtime hours but refused to pay him Overtime and to this day, still refuse to calculate the accurate hours of overtime he actually worked. Defendant Delta intentionally deceives and frauds their "ready reserve" workers to work mandatory overtime, then later denies them overtime pay.

**Morgan, Lewis & Bockius LLP and Ira Rosenstein** DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS
   1. **In or around October 2018, Ira Rosenstein knew Plaintiff had a contract with a third party.**

2. **This third party owns a business was going to offer Plaintiff a job.**
3. **Ira Rosenstein told the third party that Plaintiff was a "serial plaintiff," "a grafter" and that"he files lawsuits all over the country."**
4. **After Ira Rosenstein told this third party these 100% false statements about Plaintiff, this third party believed these lies, had an argument with Plaintiff and then the third party cancelled their contract with Plaintiff, resulting in Plaintiff losing money, loss of a prospective job opportunity, and resulting I a loss of income to other people involved in that contract.**
5. **Plaintiff immediately asked Ira Rosenstein to cease and desist and Ira did not cease and desist  because the third party told Plaintiff that Ira Rosenstein continued making the same DEFAMATORY, LIBELOUS and SLANDEROUS COMMENTS, which caused the third party to sever all ties and communication with Plaintiff and end their contract in November 2018, which would never have happened BUT FOR Ira Rosenstein's interference through defamation, libel, and slander.**
6. **Ira Rosenstein called this third party from his Morgan, Lewis & Bockius phone and used his position at this corporation, acting in his official capacity, to ruin Plaintiff's reputation and cause Plaintiff to suffer economic harm.**
7. **This third party then continued repeating the slanderous, defamatory, and libelous false statements that Ira Rosenstein manufactured as if they were facts to other people, causing Plaintiff further shame, guilt, humiliation, embarrassment, contempt, scorn, disdain, and a "grifter."**
8. **Ira Rosenstein also told Plaintiff's former attorney that Plaintiff was terminated due to some sexual "conduct" while "travelling non-rev," yet this was never stated on Plaintiff's termination letter by Defendant Delta and there is no evidence of these criminal accusations. Plaintiff advised Ira Rosenstein to cease and desist from repeating these other slanderous, defamatory, and libelous false statements to assassinate his character. Plaintiff hasn't heard Ira Rosenstein repeat slanderous, defamatory, and libelous false statements in a few months, so perhaps maybe he has finally ceased and desisted from continuing to cause Plaintiff professional ruin, economic harm, and emotional distress by publicly assassinating his character with false criminal accusations that is solely based on gossip and lies, to which he has zero proof to substantiate such allegations.**

This action involves claims pertaining to the termination of
Plaintiff by Defendant Delta.  Plaintiffs is adding a CAUSE OF
ACTION to this complaint against their
former employer, Defendant Delta, under, inter alia, the
Consolidated Omnibus Budget Reconciliation Act ("COBRA") and 29
U.S.C. § 1161 et seq., a federal statute which requires
employers to provide employees with notice of their right to
continued health care coverage after certain "qualifying
events." Compl. ¶ 2. See, 29 U.S.C.§ 1161.

Defendant Delta offers health benefits to all employees.
Plaintiff's health care benefits was cut off
Months or even weeks before termination and Plaintiff can prove
this. However, in the event that Defendant Delta disputes that,
it is UNDISPUTABLE that Plaintiff's health care insurance was
definitely cut off after their termination.  Plaintiff asked

Human Resources Manager Bill Ittounas ,on the termination phone
call, on February 15, 2018, that Plaintiff was ineligible for
Unmemployment benefits because the termination was due to his
own "sexual misconduct", "having sex for money on a Delta plane
while travelling as a non-rev," "prostitution," "filing a Title
VII lawsuit" "FMLA abuse," etc. Defendant Delta then frauded
the New York State Department of Labor and fraudulently
documented t that plaintiff was not eligible for unemployment
benefits from the New York State Department of Labor because
Delta fraudulently told NYDOL that Plaintiff never worked there
in the last quarter of the year 2016. However, in his deposition,
NYC Human Resources Manager Bill Ittounas finally admitted that
there was "NO" evidence or information to support Plaintiff's
termination and Plaintiff never travelled to Tel-Aviv and
Defendant Delta has NO EVIDENCE OF THIS and Plaintiff can get a
letter from the COUNTRY OF TEL-AVIV stating that HE NEVER
ENTERED THAT COUNTRY IN THE YEAR 2017 or 2018. Plaintiff was
also NEVER NOTIFIED THAT Defendant Delta was cutting off
Plaintiff's health insurance since Plaintiff had paid fees for
it and believed he met his deductible, because Equal Opportunity
allows you to file an appeal. Plaintiff wanted to file an appeal
but wasn't sure if he could because the termination letter NEVER
STATED the reason for Plaintiff's termination, despite what
Plaintiff was told on the phone by Human Resources Manager Bill
Ittounas and the Equal Opportunity department's lawyer Brian
SanSouci, in the email, never answered the Unemployment
Insurance denial question and it was Equal Opportunity who
falsely accused Plaintiff of defamatory slanderous and libelous
acts as a pretext to terminate Plaintiff in retaliation  for
opposing discrimination and filing a lawsuit .  Since Plaintiff
was not terminated for "sexual misconduct" of "prostitution" or
"FMLA abuse"etc, therefore, he was entitled to both COBRA and
UNEMPLOYMENT benefits. After termination, Plaintiff had no
available health insurance and as a result was forced to forgo
medical treatment for a wide variety of new and pre-existing
conditions and/or had to pay cash for prescriptions.

(1) Under COBRA, termination for reasons other than "misconduct"
is a "qualifying event," under 29 U.S.C. §§ 1161,1162(2)(A)(I),
which requires an employer to notify an employee of his or her
right to elect to continue health coverage for eighteen months
after termination.
(2) Plaintiffs also maintain a breach of contract action against
Delta, stating he was terminated without "cause," and Plainitff
authenticated the email involving the CIVIL CONSPIRACY to
fraudulently manufacture a reason. And Delta Airlines normally

does allow terminated employees, even for "misconduct" to elect
COBRA.
(3) Additionally, plaintiff brings a conversion action stating
that he repeatedly requested that his 2017 and 2018 120 hours of
PAID PERSONAL TIME and 5 weeks of vacation, and the 2 confirmed
roundtrip to any destination in the world  be returned to him, ,
but that these requests were ignored by defendant.  Defendant
Delta refused to pay out any of Plaintiff's earned money, earned
vacation time, earned PPT time, 2 confirmed Delta Airlines
ticket given to him and similarly situated employees.
As redress for COBRA claim, plaintiff seeks statutory damages
and penalties pursuant to 29 U.S.C. § 1132(c), attorneys' fees
and costs, and injunctive relief directing Defendant Delta to
provide plaintiffs with their COBRA notices and benefits, and to
reimburse Plaintiff for all of his medical expenses. COBRA is a
"legislative response to the growing number of Americans without
health insurance and the reluctance of hospitals to treat the
uninsured." Phillips v. Saratoga Harness Racing, Inc., 240 F.3d
174, 179 (2d Cir. 2001) Under COBRA, "the plan sponsor of each
group health plan shall provide that each qualified beneficiary
who would lose coverage under the plan as a result of a
qualifying event is entitled,under the plan, to elect, within
the election period, continuation coverage under the plan." 29
U.S.C. § 1161(a).Within 14 days of a qualifying event an
employer must notify an employee of his or her right to elect to
continue health coverage for a period of eighteen months. 29
U.S.C. §§ 1166(a)(4)(A),(c);29 U.S.C. §§ 1161, 1162(2)(A)(I)
(1999). Termination of employment is a qualifying event so long
as the termination was not due to the former employee's gross
misconduct. 29 U.S.C. §§ 1163(2).
In this case, it is not . . . disputed that (1)defendant
maintained a health insurance plan for its employees; (2) that
plaintiff, when employed by defendant, was a participant in that
plan; (3) that defendant was the plan administrator for the
health plan it maintained for its employees; (4) plaintiff
was not given their COBRA election notices in the 14 days
required by statute; It is undisputed that Plaintiff was
not terminated for "gross misconduct."  Defendant Delta's
failure to initially provide plaintiff with a COBRA notice when
they knew Plaintiff was not terminated for "gross misconduct,"
shows malice and retaliation, to deny someone they knew was both
disabled and a qualifying FMLA condition. Since defendant delta
admitted to having failed to send plaintiff the COBRA notice
when there was no  "gross misconduct" as grounds for termination,
there is really is no issue to be decided. Therefore, Plaintiff
this is a FEDERAL CLAIM that keeps this claim here in SDNY, and
cant send it to State Court.  Defendant Delta doesn't deny

liability on this Federal Claim and but wont let Plaintiff add
it to this EDNY lawsuit **even though Plaintiff is entitled to it.**
**See** *Devlin v.Empire Blue Cross Blue Shield, 274 F.3d 76, 90 (2d*
*Cir. 2001)*
     Statutory penalties
Plaintiffs seek remedy in the form statutory penalties under
U.S.C. § 1132(c)(1), reimbursed medical expenses and attorneys'
fees under 29 U.S.C. § 1132(g). **a. Statutory penalties and**
**reimbursement for medical expenses:** ERISA provides that
any administrator (A) who fails to meet the requirements of
paragraph (1) or (4) of section 1166 of this title . . . with
respect to a participant or beneficiary . . . may in the court's
discretion be personally liable to such participant or
beneficiary in the amount of up to $100 a day from the
date of such failure . . . , and the court may in its
discretion order such other relief as it deems proper.
     Attorney's Fees and Costs
29 U.S.C. § 1132(c)(1).Penalties under ERISA were increased to
$110 per day pursuant to the Federal Civil Penalties Adjustment
Act of 1990, as amended by the Debt Collection Improvement Act
of 1996. See 29 C.F.R. 2575.502c-1. 29 U.S.C. § 1132(g)(1)
allows a court in its discretion to award attorneys' fees "to
either party" in an ERISA action. 29 U.S.C. § 1132(g)(1);
Salovaara v. Eckert, 222 F.3d 19, 27 (2d Cir. 2000).

### SPECIAL DAMAGES

On January 4, 2017, the same day that Clifford Schwenker made these defamatory, slanderous, and libelous comments, Plaintiff received an adverse employment action (FCAN-Final Corrective Action Notice) where Plaintiff lost 2 CONFIRMED Delta Airlines roundtrip ticket given to every frontline employee by the CEO for the August 2016 technical shutdown that occurred and made headline news.

Plaintiffs non-revenue employee pass travel benefits were taken away for 3 years and Plaintiff and his family were no longer allowed to travel for pleasure and had to purchase revenue tickets as the paying public does, even though Plaintiff worked for an airline. Then taken away forever after Plaintiff was terminated.

As a result of Clifford Schwenker's malicious retaliatory defamatory, libelous and slanderous comments made in retaliation for Plaintiff reporting religious harassment, Plaintiff was immediately denied a promotion or pay raise for 3 years and thereby, therefore he suffered economic harm.

Defendant Delta Airlines' attorney stated at a deposition, on the record, that this FCAN was the reason for Plaintiff's termination. Before Plaintiff was even terminated, Plaintiff's health insurance benefits were revoked. Plaintiff lost health care insurance and his disabilities, IBS, and other physical ailments suffered as he couldn't afford further doctor visits or any medications.

As a result, Plaintiff has lost and will be losing yearly Profit Sharing checks that every employee receives.

Plaintiff lost 401k deposits and retirement funds.

Plaintiff lost a current/future annual salary of $100,000.00 a year.

Plaintiff's personal and professional reputation has been permanently damaged and it is highly unlikely Plaintiff will ever find another flight attendant position with the same pay, travel benefits, fringe benefits, company seniority, vacation pay, paid personal time, vacation pay and industry perks that all other employees are given.

Plaintiff was never able to collect Unemployment Insurance benefits.

Plaintiff was denied a job at another airline, resulting in further economic harm.

Captain Clifford Schwenker's libel, slander and defamation caused Plaintiff's colleagues to berate and hate Plaintiff  because of his religion, causing him shame, embarrassment, social isolation, further anti-Muslim bias from other pilots and flight attendants and more constant degradation from co-workers who were strangers.

### AS AND FOR A FIRST CAUSE OF ACTION
### ACTUAL FRAUD

1. Mr. Pimentel repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

 2. At various times and places partially enumerated above, all Defendants did  engage in a fraud.

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

### AS AND FOR A SECOND  CAUSE OF ACTION
### FRAUDELENT MISREPRESENTATION

1. Mr. Pimentel repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

 2. At various times and places partially enumerated above, all Defendants did  engage in a fraudulent misrepresentation of material facts.

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

### AS AND FOR A THIRD CAUSE OF ACTION
### *Civil conspiracy to Commit Fraud*

1. Mr. Pimentel repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

2.At various times and places partially enumerated above, all Defendants did engage in a civil conspiracy to defraud Mr. Pimentel and others.

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

### AS AND FOR A FOURTH CAUSE OF ACTION
## Tortious interference with contractual relations
1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2.At various times and places partially enumerated above, all Defendants did engage in tortious interference with contractual relations with Mr. Pimentel's employment contract with Defendant Delta Air Lines, Inc.

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

### AS AND FOR A FIFTH CAUSE OF ACTION
## Defamation Per Se
1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2.At various times and places partially enumerated above, all Defendants did engage in Defamation Per Se by maliciously by repeating or inventing false criminal accusations about Mr. Pimentel's to deny him a promotion, which resulted in his eventual termination of his employment contract with Defendant Delta Air Lines, Inc.

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

### AS AND FOR A SIXTH CAUSE OF ACTION
## Slander Per Se
1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2.At various times and places partially enumerated above, all Defendants did engage in Slander Per Se by maliciously by repeating or inventing false criminal accusations about Mr. Pimentel's to deny him a promotion, which resulted in his eventual termination of his employment contract with Defendant Delta Air Lines, Inc.

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

### AS AND FOR A SEVENTH CAUSE OF ACTION
## Libel Per Se
1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2.At various times and places partially enumerated above, all Defendants did engage in Libel Per Se by maliciously by repeating or inventing false criminal accusations and putting them in WRITING for THIRD PARTIES to read them to defame and slander Mr. Pimentel, which resulted in a demotion, which later resulted in his eventual termination of his employment contract with Defendant Delta Air Lines, Inc.

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

### AS AND FOR AN EIGHT CAUSE OF ACTION
## Breach of Confidentiality

1. Defendant Delta Air Lines Inc.,violated Plaintiff's HIPAA.
2. Under CPLR 4504 which states, "[u]nless the patient waives the privilege, a person authorized to practice medicine … shall not be allowed to disclose any information which he [or she] acquired in attending a patient in a professional capacity, and which was necessary to enable him [or her] to act in that capacity." *Id.* at 52. New York State case law precedential cause of action.
3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.
4. At various times and places partially enumerated above, all Defendants did engage in a breach of confidentially of Mr. Pimentel personal information.

### AS AND FOR A NINTH CAUSE OF ACTION
## New York Whistleblower Law/Retaliation

1. Lab. Law §§ 740(4), 741(4)

2. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.
3. At various times and places partially enumerated above, Defendant Delta did engage in Whistleblower retaliation

### AS AND FOR A TENTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

1. Mr. Pimentel repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

2.At various times and places partially enumerated above, all Defendants did engage in á breach of fiduciary involving Mr. Pimentel and others.

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

### AS AND FOR AN ELEVENTH CAUSE OF ACTION
## Fraudulent Inducement

1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2. At various times and places partially enumerated above, all Defendants did engage in Fraud in Inducement by false statements that were relied upon by Mr. Pimentel's to deny him a promotion, which resulted in his eventual termination of his employment contract with Defendant Delta Air Lines, Inc.

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

## AS AND FOR A TWELTH CAUSE OF ACTION
### Tortious Interference with Prospective Economic Advantage

1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2. At various times and places partially enumerated above, all Defendants did engage in Tortious Interference with Prospective Economic Advantage

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### Tortious Interference with Contract

1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2. At various times and places partially enumerated above, all Defendants did engage in Tortious Interference with Contract.

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing

1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2. At various times and places partially enumerated above, all Defendants did engage in Breach of the Implied Covenant of Good Faith and Fair Dealing.

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
### PRIMA FACIE TORT

1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2. At various times and places partially enumerated above, all Defendants did engage in Prima Facie Tort.

3.As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION,  plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

### AS AND FOR A SIXTEENTH CAUSE OF ACTION
### Negligent hiring, Retention & Supervision

1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2.At various times and places partially enumerated above, all Defendants did  engage in Negligent hiring, Retention & Supervision.

3.As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION,  plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

### AS AND FOR A SEVENTEENTH CAUSE OF ACTION
### Aiding and abetting fraud

1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2.At various times and places partially enumerated above, all Defendants did  engage in Aiding and abetting fraud.

3.As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION,  plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

### AS AND FOR AN EIGHTEENTH CAUSE OF ACTION
### Intentional infliction of emotional distress

1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2.At various times and places partially enumerated above, all Defendants did  engage in intentional infliction of emotional distress.

3.As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION,  plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

### AS AND FOR A NINTEENTH CAUSE OF ACTION
### UNDER NYCHRL 1)  SEX  DISCRIMINATION, 2)RELIGIOUS DISCRIMINATION,3)RETALIATION, 4) DISABILITY DISCRIMINATION, 5)RACIAL DISCRIMINATION, 6)FMLA INTERFERENCE and RETALIATION, 7)FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS FOR A REASONABLE ACCOMMODATION, 8) WRONGFUL TERMINATION 9)

1. Mr. Pimentel repeats and re-alleges each and every allegation herein above as if fully set forth herein.

2.At various times and places partially enumerated above, all Defendants did  engage in intentional SEX DISCRIMINATION, RELIGIOUS DISCRIMINATION, RETALIATION, DISABILITY DISCRIMINATION, RACIAL DISCRIMINATION, FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS FOR A REASONABLE ACCOMMODATION UNDER NYS laws and NYC Human Rights Laws.

3. As a result of the foregoing, Mr. Pimentel is entitled to actual damages in an amount to be determined at trial, but believed to be in excess of $900 MILLION,  plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

## JURY TRIAL DEMANDED

## RELIEF DEMANDED
1. Public apology
2. Injunctive Relief
3. Punitive DAMAGES
4. Pre-judgment interest and any other court approved relief
5. REIMBURSEMENT of ALL EXPENSES to prosecute these claims
6. Lifetime travel benefits
7. Lifetime health insurance
8. Reinstatement of job as flight attendant
9. $10 BILLION DOLLARS
10. Emotional damages
11. Attorneys fees paid in the past to assist in administrative filings
12. $100,000.00 yearly 401 K contributions
13. Front pay from the time promotion denied until DEATH
14. Guaranteed job offer when Plaintiff becomes a certified pilot
15. Seniority bump of 30 years
16. Yearly profit sharing checks
17. Back pay that was stolen from Plaintiff, including overtime, vacation pay, and PPT that Defendant Delta withheld from Plaintiff to retaliate for exercising his Title VII rights.
18. FULL TUITION AND ALL COSTS ASSOCIATED WITH PILOT TRAINING

Submitted on: 03/28/2019
By: Nicholas Pimentel
*Aasil Azzarmi*

114 John St #212
NY, NY 10272

CV#

1)Clifford Schwenker,  individually  c/o Delta Airlines 1030 Delta Blvd., Atlanta, GA,

2)Bill Ittounas, individually    c/o Delta Airlines 1030 Delta Blvd., Atlanta, GA, 30320

3)Sheandra R. Clark, individually    c/o Delta Airlines 1030 Delta Blvd., Atlanta, GA, 30320.

4)Pamela Kelly, individually c/o Delta Airlines 1030 Delta Blvd., Atlanta, GA, 30320

5)Robert Reinlan, individually c/o Delta Airlines 1030 Delta Blvd., Atlanta, GA, 30320

6)Natasha Anderson, individually c/o Delta Airlines 1030 Delta Blvd., Atlanta, GA, 30320

7)Fabio Maciel, individually  c/o Delta Airlines 1030 Delta Blvd., Atlanta, GA, 30320

8)Charlotte Ling, individually  c/o Delta Airlines 1030 Delta Blvd., Atlanta, GA, 30320

9)John Doe, individually  c/o Delta Airlines 1030 Delta Blvd., Atlanta, GA, 30320

10)Jill Wubben, individually , c/o Sedwick CMS,  300 Broadhollow Rd Ste 215w, Melville, NY. 11747

11)Ryan Langel, individually  c/o Delta Airlines 1030 Delta Blvd., Atlanta, GA, 30320

12)Marcy J. Davidson, individually, c/o Sedwick CMS,  300 Broadhollow Rd Ste 215w, Melville, NY. 11747

13)Ira Rosenstein, individually      101 Park Ave #45, New York, NY 10178

14)Delta Air Lines, Inc.,  c/o Delta Air Lines, Inc., 1030 Delta Blvd., Atlanta, GA, 30320.

15)Sedgwick Claims Management Services, Inc., 300 Broadhollow Rd Suite 215w, Melville, NY 11747

16)Jones & Jones, Inc.       5 Hanover Square, Suite 1001, New York, NY 10004

17)Dana Sabghir, individually,    5 Hanover Square, Suite 1001, New York, NY 10004

18)Ira Rosenstein, individually      101 Park Ave #45, New York, NY 10178

19)Morgan, Lewis & Bockius LLP    101 Park Ave #45, New York, NY 10178

20) Elaine Little   c/o Delta Airlines 1030 Delta Blvd., Atlanta, GA, 30320

21) Pamela Alston c/o Delta Airlines 1030 Delta Blvd., Atlanta, GA, 30320